

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00048-CV
_____

SENAIDA BUENROSTRO, INDIVIDUALLY AND AS MOTHER TO ANTHONY
BUENROSTRO, DECEASED, AND BRANDY BUENROSTRO, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF ANTHONY BUENROSTRO AND AS NEXT FRIEND
TO Z.B., A MINOR, APPELLANTS

V.

TEXAS DEPARTMENT OF TRANSPORTATION, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 10142, Honorable Kathryn H. Gurley, Presiding

October 16, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

This appeal arises from a crash on a Texas Panhandle highway which was treated with an anti-icing solution before a winter storm. Appellants, Senaida Buenrostro, individually and as mother to Anthony Buenrostro, Deceased, and Brandy Buenrostro, individually and on behalf of the Estate of Anthony Buenrostro and as next friend to Z.B., a minor (the "Buenrostro Parties"), challenge the dismissal of their claims against

Appellee, the Texas Department of Transportation ("TXDOT"). They complain the trial court erred in granting TXDOT's plea to the jurisdiction based on sovereign immunity because: (1) there were disputed issues of material fact concerning the trial court's jurisdiction; (2) TXDOT had actual notice of the Buenrostro's claims under the Texas Tort Claims Act, and the statutory notice under the Act was not required; and (3) the Buenrostro Parties timely amended their pleadings to cure any jurisdictional pleading defects. We affirm.

## BACKGROUND

One December evening in 2018, TXDOT personnel treated the highways near Muleshoe, Texas in preparation for a severe winter storm. As part of the treatment, TXDOT sprayed the roads with brine—a saltwater solution—to prevent ice formation and inhibit snow from sticking to the surface. This process, when performed correctly, also makes subsequent plowing and clearing of accumulated snow easier to perform. After it completed treating the roadways, an accident occurred at 8:00 p.m. in which a truck spun off the highway and hit a tree. TXDOT then received reports from the local police dispatch residents were complaining of "slick roads." In response, at 2:00 a.m. the next morning, TXDOT employees applied sand to the areas where the brine was previously applied. The application of sand is a standard TXDOT remedy for slippery conditions because, according to TXDOT, sand will absorb any wet materials on the road.

At approximately 9:00 a.m., a TXDOT employee inspected the brine storage tank and noted an oily contaminant floating on top of the water inside.[1] The substance had stained the sides of the tank as the water level had gone down with the previous night's brine spraying, and TXDOT decided to flush the tank to remove the contaminant. Having already applied sand, and without any further reports of accidents, no further actions were taken by TXDOT.

Around 10:00 a.m., Anthony Buenrostro drove his six-wheel fuel truck near Muleshoe going westbound on US-70. While making a lane change from the left to the right lane, he lost control of his vehicle. The truck spun and traveled sideways while Buenrostro attempted to regain control before it careened off the highway and flipped over; Buenrostro was fatally injured. He was survived by his mother, his spouse, and his minor child, who collectively sued TXDOT, the third-party supplier of the brine solution, and the manufacturer of his vehicle. TXDOT filed a plea to the jurisdiction arguing there was insufficient evidence of jurisdictional facts to waive its sovereign immunity under the Texas Tort Claims Act; the trial court agreed and granted its motion. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a plea to the jurisdiction de novo. *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020) (citing *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 929 (Tex. 2010)). In applying a de novo standard of review, we construe the pleadings in the plaintiff's favor, but we also consider relevant

---

[1] The impetus for the inspection is unknown, but testimony from a TXDOT employee indicates the TXDOT supervisor for the area requested the inspection and also the tanks were periodically inspected for inventory purposes.

3

evidence offered by the parties. *Beasley*, 598 S.W.3d at 240 (citing *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018)).

Where the defendant challenges the existence of jurisdictional facts, the court must move beyond the pleadings and consider evidence. *Tex. DOT v. Lara, 625* S.W.3d 46, 52 (Tex. 2021). The analysis then mirrors that of a traditional summary judgment. *Id.* A plea to the jurisdiction can properly challenge the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). In those cases, the court can consider evidence as necessary to resolve any dispute over those facts, even if that evidence "implicates both the subject-matter jurisdiction of the court and the merits of the case." *Id.* (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). If a fact issue exists, the trial court should deny the plea. *Garcia*, 372 S.W.3d at 635 (citing *Miranda*, 133 S.W.3d at 227–28). But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the court rules on the plea as a matter of law. *Garcia*, 372 S.W.3d at 635 (citing *Miranda*, 133 S.W.3d at 228). When the trial court's order does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

## ANALYSIS

### ISSUE ONE—EXISTENCE OF JURISDICTIONAL FACTS

The Buenrostro Parties' first issue complains they presented evidence sufficient to raise a question of fact regarding jurisdiction to defeat TXDOT's plea. They specifically

4

argue they presented evidence raising jurisdictional fact questions regarding the following:

- the existence of a dangerous condition;

- TXDOT's failure to make safe or warn of the dangerous condition; and

- whether the dangerous condition caused the death of Anthony Buenrostro.

Generally, the State of Texas and its agencies retain sovereign immunity from suit unless the Legislature clearly and unambiguously waives it. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010). The Texas Tort Claims Act waives sovereign immunity for personal injuries caused by a condition of real property. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.025(a). If a plaintiff's claim arises from a premises defect, then the government's duty is generally limited to "the duty that a private person owes to a licensee on private property." *Id.* at § 101.022(a), (c). The duty owed is the duty to warn the licensee of a dangerous condition or to make the condition reasonably safe, but only when the owner is aware of the dangerous condition and the licensee is not. *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 98 (Tex. 2023) (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). Absent willful, wanton, or grossly negligent conduct, a licensee must prove the following elements to establish the breach of duty owed to him:

(1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; [and] (5) the owner's failure was a proximate cause of injury to the licensee.

5

*Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (quoting *Payne*, 838 S.W.2d at 237). Therefore, if there is no evidence of at least one of these elements, a plea to the jurisdiction should be granted. *Sampson*, 500 S.W.3d at 391 (citing *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 512–14 (Tex. 2008)). We find the Buenrostro Parties failed to present sufficient evidence to demonstrate an issue of fact regarding TXDOT's actual knowledge of the condition and its failure to exercise ordinary care proximately caused the injury.

### *Actual Knowledge*

A plaintiff suing for premises liability under the Tort Claims Act must show that the owner actually knew of the dangerous condition *at the time of the accident*, not merely of the possibility that a dangerous condition could develop over time. *Sampson*, 500 S.W.3d at 392 (citations and internal quotations omitted). Hypothetical knowledge will not suffice. *Id.* Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition. *Union Pac. R.R. Co. v. Prado*, 685 S.W.3d 848, 861–62 (Tex. 2024) (citations and quotations omitted). Circumstantial evidence establishes actual knowledge only when it either directly or by reasonable inference supports that conclusion. *Id.*

The Buenrostro Parties point to the following as evidence of TXDOT's actual knowledge of the condition:

6

- another accident occurred at around 8:00 p.m. the night before Buenrostro's accident on the same highway one-quarter of a mile away in the opposite direction;

- TXDOT received complaints of slippery roads from the Muleshoe police dispatch;

- anecdotally, residents of Muleshoe claimed the roads were "slick" and thought TXDOT was spraying oil on the road; and

- TXDOT discovered the contaminant in the brine an hour before the accident occurred.

The accident occurring the night before Buenrostro's accident does not impute knowledge to TXDOT, because the evidence did not establish the cause of the accident as the contaminant from the brine tank.[2] There were no accidents in the intervening fourteen hours between the accident the evening before and Buenrostro's incident. The evidence shows TXDOT did not have actual knowledge there was a contaminant until it inspected the tank over twelve hours after spraying the brine.[3] Finally, there is no evidence TXDOT knew the contaminant from the brine had made its way onto the roadway.[4] *See City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536–37 (Tex. 1996) (per curiam) (school's knowledge of leaky roof did not give it actual knowledge of the water leaking onto the

---

[2] The Buenrostro Parties suggest the prior accident was caused by the contamination simply because the accident occurred after the spraying of the brine and the fact the accident report stated "lost control on the wet pavement" as the cause of the accident. However, (1) wet pavement, without something more, is not an unreasonably dangerous condition; and (2) the report failed to note any oil or oily residue was noted by the reporting officer as a contributing factor. *See Christ v. Tex. DOT*, 664 S.W.3d 82, 87 (Tex. 2023) (commonplace hazards are not unreasonably dangerous as a matter of law).

[3] Because TXDOT had already applied sand to the brined areas of the road, the only remedial action it would have taken for oil contamination, TXDOT took no further actions before Buenrostro's accident, which occurred one hour after discovery of the contaminant.

[4] After learning of the contamination of the brine, TXDOT employees did not believe the contaminant would have caused "slick roads" because the contaminant was found floating on top of the water and the brine was sprayed onto the road from the bottom of the tank.

7

basketball court below after a rain). This evidence failed to raise a fact question as to TXDOT's actual knowledge the contaminant in the brine caused an unreasonably dangerous condition at the time of the accident.

### *Proximate Cause*

Moreover, even if the evidence had raised a fact question regarding TXDOT's actual knowledge, there was still no evidence of proximate causation. Proximate cause comprises two elements: cause in fact and foreseeability. *Del Lago Ptnrs. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005)). The general test for cause in fact is whether the defendant's act or omission was a substantial factor in causing the injury and without which the injury would not have occurred. *Del Lago Ptnrs.*, 307 S.W.3d at 774 (citing *Urena*, 162 S.W.3d at 551).

The Buenrostro Parties' theory of the case was a contaminant in the brine used by TXDOT created an unreasonably dangerous condition which proximately caused Buenrostro's death. Thus, in order to show proximate cause, they had to present evidence sufficient to raise a question of fact as to whether the contaminant caused the accident. While the evidence demonstrated there was a contaminant in the brine, the evidence does not establish a causal link between the contaminant and the accident. The bare facts of the presence of an unknown contaminant in the brine and the spraying of the brine on the road are not enough to establish cause in fact. There is no evidence of:

- what the contaminant was; [5]

---

[5] No sample was taken of the contaminant by TXDOT, and the contaminant remains unidentified. TXDOT employees took video of the contaminated tanks and the flushing of the tanks to clean out the contaminant, but there was no protocol in place to save a sample of the contaminant.

- how much of the brine was contaminated;

- how the contaminant affected road conditions;

- how much of the contaminant made its way onto the roadway; or

- how much of the contaminant remained on the road at the time of the accident.

Without at least establishing what the contaminant was and *how* it conceivably caused the accident, the assertion the contaminant caused Buenrostro's accident is conclusory conjecture. *See Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016) ("Conjecture, guess, and speculation are insufficient to prove cause in fact and foreseeability."). Without evidence showing the contaminant was a substantial factor in causing the accident, the Buenrostro Parties failed to raise a fact issue regarding proximate causation.

### *No Issues of Jurisdictional Facts*

The Buenrostro Parties, having failed to present sufficient evidence to raise a jurisdictional fact issue as to each element of a premises liability claim under the Tort Claims Act, did not demonstrate a waiver of sovereign immunity. The trial court did not err by granting TXDOT's plea to the jurisdiction. Issue one is overruled.

The Buenrostro Parties' second issue complained TXDOT had actual notice of the premises defect and statutory notice was not required, while their third issue complained their amended pleadings cured any jurisdictional pleading defects. However, because they failed to meet their burden to demonstrate the trial court had jurisdiction, their second and third issues are moot. TEX. R. APP. P. 47.1.

9

**CONCLUSION**

The trial court's judgment is affirmed.


Alex Yarbrough
Justice